**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID ROSARIO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:24-cv-1387 |
| | ) | |
| v. | ) | Magistrate Judge Patricia L. Dodge |
| | ) | |
| SUPERINTENDENT MICHAEL | ) | |
| ZAKEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**[1]

David Rosario ("Rosario") brings this pro se civil action against various individuals employed by the Pennsylvania Department of Corrections ("DOC"). Rosario's claims arise from events alleged to have occurred while he was incarcerated at State Correctional Institution ("SCI") Greene.

Pending before the Court is Defendants' Motion to Dismiss (ECF No. 74). For the following reasons, the motion will be granted in part and denied in part.

## I.    Procedural History

Rosario commenced this action in October 2024. (ECF No. 1.) The Court granted him leave to proceed in forma pauperis (ECF No. 4), and the initial Complaint (ECF No. 6) was docketed on November 1, 2024. The Complaint asserted claims under the Eighth and Fourteenth Amendments, as well as state law, against twenty-two DOC employees.

---

[1] In accordance with 28 U.S.C. § 636(c), the parties have consented to full jurisdiction by a United States Magistrate Judge. (ECF Nos. 44, 58.) The undersigned therefore has authority to conduct all proceedings and enter final judgment.

Defendants moved to dismiss on April 16, 2025. (ECF No. 40.) Rather than respond to Defendants' motion, Rosario sought leave amend in order "to correct the deficiencies in his original complaint." (ECF No. 60.) The Court granted Rosario's motion and the Amended Complaint was docketed on July 17, 2025. (ECF No. 64.)

The Amended Complaint (ECF No. 65) names the same twenty-two Defendants: Superintendent Michael Zaken; Lieutenant ("Lt.") Siebert; Lt. Cole; Captain Parker; Lt. Barbieri; Lt. Kenawell; Lt. Yauger; Sergeant ("Sgt.") Wright; Sgt. Churilla; Sgt. Fielder; Counselor Eric Hurd; Unit Manager Daniel Coulehan; Psychology Services Specialist ("PSS") James Wittman; Superintendent Stephen Buzas; PSS Jeffrey Bowden; Hearing Examiner Beth Rudzienski; C.O. 1 Kelley; C.O. 1 Garasich; C.O. 1 Schaeffer; C.O. 1 Newland; C.O. 1 Eans; and C.O. 1 Churney (collectively, "Defendants").

Although not separated into discrete counts, the Court construes the section titled "VII. Legal Claims" as asserting the following claims: Eighth Amendment excessive force against Eans, Siebert, Parker, and Churilla (*id.* ¶¶ 137-39); Eighth Amendment conditions of confinement against all Defendants except Rudzienski (*id.* ¶¶ 140-43); Eighth Amendment denial of medical care against Wittman and Bowden (*id.* ¶¶ 144-46); Fourteenth Amendment deprivation of due process against Churilla, Coulehan, and Rudzienski (*id.* ¶¶147-49); Fourteenth Amendment discrimination against all Defendants (*id.* ¶¶ 153-55); state law abuse of process against Churilla, Coulehan, and Rudzienski (*id.* ¶¶ 156-57); and state law negligence (*id.* ¶ 158), IIED (*id.* ¶¶ 159-60), and conspiracy (*id.* ¶¶ 161-62) against all Defendants.[2]

---

[2] Rosario lists the same claims, albeit in a different order, in his response to Defendants' motion to dismiss. *See* ECF No. 85 at 2.

Defendants have now moved to dismiss the Amended Complaint.[3] (ECF No. 74.) The motion has been fully briefed (ECF No. 75, 84, 85), and is ready for disposition.

## II.     Relevant Factual Allegations

According to the Amended Complaint, at 11:30 a.m. on May 13, 2023, Rosario was confined to cell LC-2026 in SCI Greene's Intensive Management Unit when he heard C.O. Kelley, Schaeffer, and Garasich discussing a need to "burn" someone to limit the number of inmates in the prison yard. (ECF No. 65 ¶¶ 31-32.) Kelley and Schaeffer approached LC-2026 and told Rosario that he would not be going to the yard because he had a clothesline hanging in the cell. (*Id.* ¶ 34.) Rosario protested but was ultimately left in his cell where he began experiencing suicidal thoughts. (*Id.* ¶¶ 35-37.)

Around 12:00 p.m., Rosario pressed his cell's medical emergency call button and notified Sgt. Churilla he was having suicidal ideations in an attempt to get mental health intervention.[4] (*Id.* ¶ 38.) Churilla approached cell LC-2026 and discovered Rosario had obscured the window with his state-issued jumpsuit. (*Id.* ¶ 39.) Rosario did not respond to Churilla knocking on the cell door and Churilla allegedly began berating Rosario. (*Id.* ¶¶ 40-41.) Churilla told Rosario there was no psychological staff available because it was a Saturday. (*Id.* ¶ 44.) Lt. Siebert also came to cell LC-2026, and Rosario expressed the need for psychological assistance. (*Id.* ¶¶ 46-47.) In response, Siebert allegedly began aggressively shaking the cell door and threatening to physically harm Rosario. (*Id.* ¶ 50.)

---

[3]  This case was temporarily stayed from August 26 to October 3, 2025, pursuant to Administrative Order No. 2025-14. *See* ECF Nos. 72, 73.

[4]  The Amended Complaint asserts that Rosario has an extensive history of mental illness and is prescribed several psychotropic medications, including mood stabilizers and anti-psychotics. (ECF No. 65 ¶ 45.)

Rosario remained largely unresponsive to security staff for over an hour, insisting that he would only speak to a trained member of the institution's psychology staff. (*Id.* ¶¶ 46-47.) Eventually, a DOC sergeant not named in this action convinced Rosario to uncover his cell window. (*Id.* ¶ 52.) The sergeant notified Siebert that Rosario was complying with orders and required psychiatric help. (*Id.* ¶ 53.)

At approximately 1:30 p.m., an extraction team consisting of Siebert, Churilla, and C.O. Eans entered cell LC-2026 and deployed a full can of Oleoresin Capsicum ("OC") spray. (*Id.* ¶¶ 57, 59.) Rosario was removed from the cell and strip searched before a member of SCI Greene's medical team cleansed his eyes with saline and visually examined him. (*Id.* ¶¶ 61-65.) Rosario received a misconduct from Churilla because of this incident. (*Id.* ¶ 68.)

Rosario was taken to a different cell, LC-1011, which he describes as "bare" and "devoid of even the most basic necessities[,]" including water, a working toilet and sink, hygiene products, and bedding. (*Id.* ¶¶ 65-66.) He was not given clean clothes and had only the t-shirt and boxer shorts that he had been wearing when he was sprayed with OC. (*Id.* ¶ 66.) He continued to request psychiatric services but was denied. (*Id.* ¶ 67.)

Eventually Rosario had a "psychotic break," and began smearing feces on his face, body, and the walls of his cell. (*Id.* ¶ 71.) He was later moved to cell LC-1012, which also had "an inoperable sink and toilet, as it runs through the same plumbing system as LC-1011[.]" (*Id.* ¶ 88.) At some point, a pipe burst, causing cell LC-1012 to flood with "toilet water." (*Id.* ¶ 96.)

On May 18, 2023, Rosario saw Psychology Services Specialist Wittman. (*Id.* ¶ 110.) Immediately after, Hearing Officer Rudzienski conducted a disciplinary hearing for misconduct

reports written by Churilla and Coulehan.[5] (*Id.* ¶ 113.) Rosario was found guilty and received a sanction of seventy-five days of disciplinary custody status. (*Id.* ¶ 119.)

Rosario alleges that he was housed in the described conditions until May 21, 2023, when he was "finally provided a change of undergarments, toiletries, hygiene products, and a washcloth" after eight days. (*Id.* ¶ 123.) He was permitted to shower for the first time on May 22, 2023, at which time he "decontaminated himself" of feces and lingering OC spray on his body, face, and hair. (*Id.* ¶ 124.)

Throughout this time, Rosario alleges that various DOC employees and supervisory officials observed the conditions of his cell and were aware that he was displaying obvious signs of psychosis. He alleges that Defendants nevertheless failed to intervene. Rosario claims to have incurred a number of emotional and physical injuries as a result. (*Id.* ¶¶ 126-134.)

III.   **Legal Standard**

A complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome a 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To decide a 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any

---

[5] Coulehan issued Rosario a disciplinary action report "for smearing feces on his cell walls[.]" (ECF No. 65 ¶ 109.)

reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In assessing the sufficiency of a complaint, a court must therefore: (1) outline the elements plaintiff must plead to state a claim for relief; (2) peel away allegations that amount to mere conclusions and are thus not entitled to the assumption of truth; and (3) look for well-pled factual allegations, assume their veracity, and determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Typically, if a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236 (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

Additionally, the filings of a pro se party must be liberally construed and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-

established."). Moreover, the court must "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). That said, "pro se litigants still must allege sufficient facts in their complaints to support a claim[,]" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245

## IV. Discussion

### A. Eighth Amendment claims

#### 1. Excessive force

Rosario alleges that Eans, Siebert, Churilla, and Parker used excessive force in violation of the Eighth Amendment by deploying OC spray while he was suffering a mental health crisis. (ECF No. 65 ¶¶ 137-139.) Defendants argue that the amount of force used was proportional to the legitimate penological need to extract Rosario from his cell after he stopped responding to DOC staff. (ECF No. 75 at 8-11.)

"After conviction, the Eighth Amendment serves as the primary source of substantive protection in cases when an inmate challenges a prison official's use of force as excessive and unjustified." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000). The following legal considerations are relevant to a claim for excessive force:

> An Eighth Amendment claim has an objective and subjective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The defendant must act with a "sufficiently culpable state of mind," and the conduct must be objectively harmful enough to violate the Constitution. *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991). In evaluating the subjective component of an excessive force claim, the Court should consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (citations omitted). Several factors guide this analysis: "(1) the need for the application of force; (2) the relationship between the need and

the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." *Id.* (internal quotations omitted). In addressing the objective component of an Eighth Amendment claim, the question is whether the injury was more than de minimis. *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000). The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary. *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984).

*Gibson v. Flemming*, 837 Fed. Appx. 860, 862 (3d Cir. 2020).

Defendants cite several cases in support of their position that Rosario's allegations concerning OC spray do not state a claim under the Eighth Amendment. All of these cases were decided on summary judgment,[6] however, at which point a fully developed record supported the defendants' position that the use of OC spray was necessary under the circumstances.

At this early stage of litigation, the relevant question is whether Rosario's factual allegations, accepted as true and construed in his favor, could plausibly support an inference that force was applied maliciously or for punitive purposes rather than in a good-faith effort to restore discipline. Here, Rosario alleges that he repeatedly informed DOC staff that he was suicidal and requested mental health services. While he admits to being unresponsive and covering his cell window for an hour, he claims to have removed the covering and resumed communicating with DOC staff prior to Siebert seeking Parker's approval for an extraction team.[7] Upon learning that

---

[6] *See Luciano v. Lindberg*, 2012 WL 1642466, at *19 (M.D. Pa. May 10, 2012); *Picozzi v. Haulderman*, 2011 WL 830331, at *5 (M.D. Pa. 2011); *Soto v. Dickey*, 744 F.2d 1260, 1270 (4th Cir. 1984); *Warrick v. Harry*, 2024 WL 2059084, at *5 (M.D. Pa. May 8, 2024); *Martin v. Wetzel*, 2021 WL 2926005, at *10 (W.D. Pa. July 12, 2021), *aff'd sub nom. Martin v. Sec'y Pennsylvania Dep't of Corr.*, 2024 WL 1952864 (3d Cir. May 3, 2024); *Easley v. Tritt*, 2021 WL 978815, at *15 (M.D. Pa. Mar. 16, 2021); *Jones v. Wetzel*, 2017 WL 4284416, at *7-10 (M.D. Pa. Sept. 27, 2017).

[7] Rosario alleges that Parker was responsible for overseeing day-to-day security operations at SCI Greene and therefore approved Siebert's request to form an extraction team. (ECF No. 65 ¶ 57.) It is further alleged that Parker "tolerates, acquiesces in, and even encourages all use of force, as a means to impose his will

Rosario was complying, Siebert allegedly responded that they were "going to spray" Rosario and "pull him out screaming" (ECF No. 65 ¶ 53), evidencing possible malicious intent. It is also alleged that the extraction team deployed an entire can of OC spray despite the absence of any immediate threat.

While the evidentiary record may ultimately demonstrate that the extraction and use of OC spray was justified by legitimate security concerns, at the pleading stage, these allegations are sufficient to state a plausible Eighth Amendment excessive force claim. As a result, Defendants' motion will be denied but they may renew this argument on a fully developed record, as appropriate.

2. Conditions of confinement

Rosario alleges that all Defendants except Rudzienski violated the Eighth Amendment by housing him in inhumane conditions. (ECF No. 65 ¶¶ 140-43.) Defendants argue that Rosario's claim fails because the conditions in cells LC-1011 and 1012 were self-imposed and short-lived. (ECF No. 75 at 11-14.)

The Eighth Amendment prohibits cruel and unusual punishment that "violates civilized standards of humanity and decency." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Prison conditions are cruel and unusual if they deprive inmates of basic human needs, such as food, sanitation, and medical care. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). The Eighth Amendment does not, however, require that prisons be comfortable. *Mammana v. Fed. Bureau of*

---

and control" (*id.* ¶ 58), and that Siebert "acted in concert with defendant Parker" (*id.* ¶ 138) to use excessive and unnecessary force when extracting Rosario from his cell on May 13, 2023. These allegations are sufficient at the pleading stage to show that Parker was personally involved in the alleged misconduct. *See Sykes v. Carroll*, 477 F. App'x 861 (3d Cir. 2012)) ("'[A] defendant in a civil rights action . . . cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'").

*Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (citing *Rhodes*, 452 U.S. at 349).

To state a claim under the Eighth Amendment, plaintiffs must make both an objective and subjective showing. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective prong, a prisoner "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Mammana*, 934 F.3d at 373 (quoting *Farmer*, 511 U.S. at 834). The deprivation alleged must be "objectively, sufficiently serious" so as to have resulted in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 298 and *Rhodes*, 452 U.S. at 347)). A prisoner must then show that the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 229 (3d Cir. 2015) (quoting *Farmer*, 511 U.S. at 847). The prisoner "may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that the defendants must have known about the risk." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010) (quoting *Farmer*, 511 U.S. at 842-43) (citation modified).

Defendants again cite cases decided at the summary judgment stage in support of their position that the severity and duration of the conditions alleged are insufficient to give rise to a constitutional claim.[8] But as with the excessive force claim, the Court's inquiry at this early procedural stage is similarly limited to whether Rosario plausibly alleged a deprivation of "the

---

[8] *See Banks v. Mozingo*, 423 F. App'x 123, 125 (3d Cir. 2011); *Dantzler v. Beard*, 2007 WL 5018184, at *1 (W.D. Pa. 2007); *Woods v. Abrams*, 2007 WL 2852525, at *3-4 (W.D. Pa. 2007); *Whitney v. Wetzel*, 2015 WL 4920071, at *3 (W.D. Pa. 2015); *McCullon v. Saylor*, 2013 WL 1192778, at *10, *report and recommendation adopted*, 2013 WL 1192963 (M.D. Pa. 2013); *Tsosi v. Holt*, 2012 WL 1191608, at *1 (M.D. Pa. 2012).

minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834.

As discussed, Rosario alleges that he was housed in unsanitary conditions for eight days. While Defendants focus primarily on Rosario's own contribution to the condition of his cells, the Amended Complaint also alleges that cells LC-1011 and 1012 did not have operational toilets or sinks and that there was flooding due to a burst sewage pipe. Rosario claims he was denied hygiene products, bedding, and water. He also alleges that the little clothing he was wearing had been sprayed with OC and he was not permitted to shower. DOC staff allegedly observed these conditions over the course of the eight days that Rosario was housed in cells LC-1011 and 1012 and failed to intervene in any meaningful way. As a result, Rosario claims to have experienced actual harm in the form of severe headaches, nausea, insomnia, loss of appetite, burning of the eyes, skin, scalp, and genital areas, numbness of the feet and toes, and lingering cough and chest congestion that required medication.

Accepting these allegations as true, the Court concludes that Rosario has plausibly stated a conditions-of-confinement claim sufficient to survive dismissal. As with the excessive force claim, the Court notes that Defendants are free to renew this argument on a fully developed record, as appropriate.

3.  Denial of medical care

Rosario alleges that Bowden and Wittman were deliberately indifferent to his serious medical needs. Defendants argue that this claim fails because Rosario received psychological care on May 18, 2023. (ECF No. 75 at 15-17.)

To succeed on an Eighth Amendment denial of medical care claim, the plaintiff must demonstrate: (1) that they had a serious medical need; and (2) that prison officials were deliberately

indifferent to that need. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference may be manifested by intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *see Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the fact of resultant pain and risk or permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

At this stage of the proceedings, Rosario's allegations against Bowden and Wittman are sufficient to proceed to discovery. The first element of his Eighth Amendment claim is established by his allegation that he suffered from schizophrenia, a severe mental health disorder, that caused him to suffer a psychotic break and otherwise display suicidal tendencies. *See, e.g.*, *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017).

As to the subjective component, the Amended Complaint alleges that Rosario repeatedly expressed his suicidal ideation, exhibited obvious psychiatric instability, and specifically requested psychological intervention. In response, he alleges that DOC staff mocked, ignored, and threatened him, treating him exclusively as a disciplinary problem. He specifically avers that Wittman walked past his cell "just shaking his head, after seeing that plaintiff had, again, deteriorated from his typically more stable mental state." (ECF No. 65 ¶ 92.) Bowden is alleged to have conducted a wellness check on May 16, 2023, three days after Rosario initially requested mental health services. Rosario further asserts that his history of mental illness was well-documented and known to DOC staff.

Again, while the evidentiary record may ultimately show a legitimate reason supports the delay in treatment, at this early stage, Rosario has alleged facts plausibly showing that Bowden

12

and Wittman were deliberately indifferent to his serious medical need. Defendants' motion will therefore be denied.

## B. Fourteenth Amendment claims

### 1. Deprivation of due process

Rosario alleges that the disciplinary proceeding conducted by Rudzienski based on Churilla and Coulehan's reports violated his right to procedural due process. Defendants argue that this claim fails because no protected liberty interest is implicated. (ECF No. 75 at 17-18.)

The Supreme Court has recognized that states "may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citation modified). "Discipline by prison officials in response to a wide range of misconduct falls within the expected [parameters] of the sentence imposed by a court of law." *Id.* at 485. Based on *Sandin*, the Third Circuit has held that months-long stays in restrictive confinement did not implicate a liberty interest. *See e.g.*, *Griffin v. Vaughn*, 112 F.3d 703, 706-08 (3d Cir. 1997) (holding fifteen months in administrative custody was insufficient to trigger due process protections); *Smith v. Mensinger*, 293 F.3d 641, 645, 654 (3d Cir. 2002) (holding seven months in disciplinary custody did not present atypical and significant hardship).

Here, the seventy-five-day disciplinary sanction imposed at Rosario's misconduct hearing does not represent a liberty interest that would entitle him to relief. As a result, Rosario has not stated a claim for denial of due process for the resulting confinement under what he alleges were improper circumstances. Defendants' motion to dismiss will be granted such that Rosario's due

13

process claim is dismissed with prejudice as amendment would be futile.

   2.   Equal protection

   Rosario alleges Defendants violated the Fourteenth Amendment by discriminating against him based on his mental illness. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Att'y Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); *see also United States v. Armstrong*, 517 U.S. 456, 456-57 (1996) (stating Equal Protection Clause prohibits decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification).

   Rosario broadly asserts that Defendants "arbitrarily and irrationally discriminated against [him] for exhibiting mental health symptoms" by denying him basic needs, paperwork, meals, and safe living conditions. (ECF No. 65 ¶ 153.) He alleges that this treatment was "in complete contradiction to other similarly situated prisoners[.]" (*Id.* ¶ 154.) Beyond this conclusory statement, however, Rosario fails to allege facts that might support such a claim. The Court is therefore unable to infer that Rosario was selectively treated compared with other similarly situated inmates, that this selective treatment was motivated by Defendants' intention to discriminate on the basis of Rosario's mental illness, or that Rosario's membership in the protected class was a substantial factor in Defendants' selective treatment.

   Defendants raised the defects in Rosario's equal protection claim in their initial motion to dismiss filed in response to the original Complaint. Even after amending his allegations in the

14

Amended Complaint, however, Rosario has failed to state an equal protection claim against Defendants. Rosario's equal protection claim will therefore be dismissed as to all Defendants with prejudice.

### C. Personal Involvement

Defendants argue that all civil rights claims against Kelley, Garasich, Schaeffer, Wright, and Cole should be dismissed for failure to plead sufficient personal involvement.[9] (ECF No. 75 at 6-7.)

Beyond meeting the minimum pleading standards to plausibly state a claim, a § 1983 plaintiff also bears the burden of showing that each named defendant was personally involved in the alleged constitutional violation. *See Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020). Allegations must be made with appropriate particularity and must sufficiently describe each defendant's participation in or actual knowledge of and acquiescence in the alleged misconduct. *Chavarriaga*, 806 F.3d at 222 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *see also Mack v. Clark*, 2022 U.S. Dist. LEXIS 121813, at *12 (W.D. Pa. Jul. 11, 2022) ("Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient.").

The doctrine of respondeat superior alone cannot be the basis for liability in a § 1983 action. *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions,

---

[9] Defendants also argued lack of personal involvement as to Parker.

15

has violated the Constitution."). "Personal involvement requires particular allegations of personal direction or of actual knowledge and acquiescence." *Dooley*, 957 F.3d at 374. Constructive knowledge is not enough. *See Chavarriaga*, 806 F.3d at 222 ("Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive.").

The only allegations against Kelley, Garasich, and Schaeffer are that they did not permit Rosario to leave cell LC-2026 to go to the yard because he had a clothesline hanging in his cell. (ECF No. 65 ¶¶ 32, 34-35.) Even assuming these allegations are true, they fail to show that these three Defendants were personally involved in any actionable wrongdoing. Because the Amended Complaint does not plausibly allege that Kelley, Garasich, and Schaeffer participated in any of the alleged subsequent constitutional misconduct, the § 1983 claims against them will be dismissed.

The allegations against Wright and Cole similarly fail to plausibly establish personal involvement. Rosario alleges only that Wright and Cole were "aware" of his conditions or "refused" to take action to assist him. (*Id.* ¶¶ 79, 97, 103.) Aside from these few conclusory statements, there are no facts offered to establish how Wright or Cole acquired such knowledge or what authority they had to remedy the alleged conditions. And while Rosario vaguely references "other inmates" telling Wright about the burst pipe in LC-1012, this is simply not enough to demonstrate the personal direction or actual knowledge required under *Rode*. The § 1983 claims against Wright and Cole will therefore also be dismissed.

16

### D. State-law claims

Finally, Defendants argue that Rosario's common-law claims are barred by state sovereign immunity.[10] Under Pennsylvania law, "the Commonwealth, and its officials *and employees acting within the scope of their duties*, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. Cons. Stat. § 2310 (emphasis added). "[S]overeign immunity applies even to intentional torts committed by Commonwealth defendants acting in their individual capacities." *Doe v. Pa. Dep't of Corr.*, 2021 WL 1583556, at *18 (W.D. Pa. Feb. 19, 2021). The Pennsylvania General Assembly has agreed to waive sovereign immunity as a bar to action in only nine categories of claims.[11] Thus, Pennsylvania's sovereign immunity statute affords state officials broad immunity for state-law tort claims.

Here, all Defendants are alleged to be employed by the DOC and the allegations in the Amended Complaint "place the conduct of each of the Defendants squarely within the scope of their employment." *Doe*, 2021 WL 1583556, at *18. Additionally, Rosario's claims are not encompassed by any of the enumerated exceptions. None of the ten enumerated exceptions apply. *See Dean v. Commonwealth, Dep't Transp.*, 751 A.2d 1130, 1134 (Pa. 2000) ("Exceptions to sovereign immunity are to be narrowly construed."). Defendants are therefore entitled to sovereign

---

[10] Defendants' brief asserts that Rosario "appears to have abandoned all but the [IIED] claim." (ECF No. 75 at n.2.) As stated above, the Court construes the Amended Complaint as asserting state-law claims for abuse of process, negligence, IIED, and conspiracy. The Court agrees with Defendants, however, that the sovereign immunity analysis is the same for all claims asserted.

[11] Sovereign immunity has been waived for cases involving damages caused by: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Cons. Stat. § 8522.

immunity. Accordingly, Rosario's state-law claims for abuse of process, negligence, IIED, and conspiracy will be dismissed with prejudice.

## V.   <u>Conclusion</u>

For these reasons, Defendants' Motion to Dismiss (ECF No. 74) will be granted in part as follows:

1.   The Fourteenth Amendment due process claim is dismissed with prejudice as to all Defendants;

2.   The Fourteenth Amendment equal protection claim is dismissed with prejudice as to all Defendants;

3.   The Eighth Amendment claims against Defendants Kelley, Garasich, Schaeffer, Wright, and Cole are dismissed for lack of personal involvement; and

4.   The state-law claims of abuse of process, negligence, IIED, and conspiracy are dismissed with prejudice as to all Defendants.

Defendants' motion is otherwise denied.

An appropriate order to follow.

Dated:  June 2, 2026                         /s/ Patricia L. Dodge
                                             PATRICIA L. DODGE
                                             UNITED STATES MAGISTRATE JUDGE

18